# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| DOTTIE COFFEY <br> 355 Ellis Road <br> Mt. Orb, Ohio 45154 <br><br> Plaintiff, <br><br> v. <br><br> OHIO VETERANS HOME <br> 2003 Veterans Boulevard <br> Georgetown, Ohio 45121 <br><br> DEPARTMENT OF VETERAN'S SERVICES <br> 77 S. High Street <br> Columbus, Ohio 43215 <br><br> DEBORAH ASHENHURST <br> 77 S. High Street <br> Columbus, Ohio 43215 <br><br> MARY MILLER <br> 77 S. High Street <br> Columbus, Ohio 43215 <br><br> KIMBERLY KEPLINGER <br> 2003 Veterans Boulevard <br> Georgetown, Ohio 45121 <br><br> AMY SUTTON <br> 2003 Veterans Boulevard <br> Georgetown, Ohio 45121 <br><br> DONNA GREEN <br> 77 S. High Street <br> Columbus, Ohio 43215 <br><br> Defendants. | Case No.: 1:20-cv-930 <br><br> Judge _____ <br><br> **COMPLAINT WITH JURY DEMAND** <br> **ENDORSED HEREON** |

1

**PARTIES**

1. Plaintiff Dorothy Coffey ("Plaintiff") is a citizen of the United States and resident of Brown County, Ohio. Plaintiff was employed by the Ohio Veterans Home, which is located in Brown County, Ohio.

2. Defendant Ohio Veterans Home ("OVH") is a state institution located in Georgetown, Ohio. OVH is being sued for relief under Title VII and 42 U.S.C. § 1983.

3. Defendant Ohio Department of Veteran Services ("ODVS") is a state institution located in Columbus, Ohio.

4. Defendant Deborah Ashenhurst is a United States citizen and Director for ODVS. Ms. Ashenhurst is being sued in her official and individual capacities.

5. Defendant Mary Miller is a United States citizen and the Chief Human Resources Officer for ODVS. Ms. Miller is being sued in her official and individual capacities.

6. Defendant Kimberly Keplinger is a United States citizen and Nurse Manager for OVH. Ms. Keplinger is being sued in her official and individual capacities.

7. Defendant Amy Sutton is a United States citizen and a Support Services Director for OVH. Ms. Sutton is being sued in her official and individual capacities.

8. Defendant Donna Green is a United States citizen and a Labor Relations Officer for ODVS. Ms. Sutton is being sued in her official and individual capacities.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States including Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. § 1983.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because Plaintiff was employed in this Division and District and the unlawful conduct alleged in this Complaint has taken place within this Division and District.

11. Plaintiff filed a timely Charge of Discrimination against OVH and ODVS with the Equal Employment Opportunity Commission ("EEOC") on October 24, 2019.

12. The EEOC did not rule that her charge was untimely.

13. Plaintiff filed this Complaint within 90 days of receipt of the Notice of Suit Rights issued by the EEOC.

**FACTUAL ALLEGATIONS**

14. Plaintiff began working for Defendants OVH and ODVS on November 17, 2014 as an Executive Assistant.

15. In February 2015, Plaintiff began experiencing gender-related inappropriate and offensive conduct committed by the nursing home supervisor, a superior. Plaintiff complained to the Human Resources representative who asked Plaintiff to put her complaint in writing, which Plaintiff did.

16. In August 2016, the administrator called Plaintiff, among other names, "a sex magnet." Plaintiff again brought the inappropriate comments to the attention of Human Resources.

17. Despite her repeated complaints, Defendants OVH and ODVS allowed the hostile work environment to continue.

18. Defendants OVH and ODVS then transferred Plaintiff to the Maintenance Department and placed her in an Administrative Assistant IV role effective April 3, 2017. Although the role maintained the same pay and benefits, Plaintiff no longer reported to an executive level employee at OVH.

19. Unfortunately, Plaintiff's work experience only worsened following her transfer. Lead Maintenance Worker Terry Anderson made clear that he did not want Plaintiff in that role. On numerous occasions, Anderson and other workers made disparaging comments about Plaintiff's position and humiliated and verbally attacked her.

20. On several occasions, Plaintiff left the Maintenance Department crying, had trouble sleeping, experienced weight changes, and suffered from depression.

21. In June 2018, Plaintiff met with HR about how her environment, and particularly Anderson's conduct, was affecting her mental and physical health.

22. Not long after Plaintiff complained about Anderson, her manager, Charlie Hall left OVH. Hall warned Plaintiff that Anderson was out to get her. In fact, Anderson had told Hall that he planned to "get rid of" Plaintiff if Anderson replaced Hall.

23. Part of Plaintiff's responsibilities in the Maintenance Department was to assist the General Services Division for State and Federal Surplus by notifying the Division when extra items were placed in the Maintenance Department.

24. Whenever an item showed up in the Maintenance Department that could no longer be used by OVH, Charlie Hall would ask Plaintiff to contact the General Services Division for instructions on how to dispose of the item.

25. Plaintiff generally would take a picture of the item, send the picture via email to the Manager of the General Services Division for State and Federal Surplus, Amy Rice, and await instruction from Rice. If Rice believed the item should be transported to State Surplus, she would so inform Plaintiff. Plaintiff would enter that information into a document called a Miscellaneous Turn-In form, which would then be sent back to the General Services Division for review and approval.

26. If, however, Rice believed that the item should be trashed, she so notified Plaintiff and OVH had the authority to figure out how to dispose of the item. Sometimes, OVH donated items designated as trash. Other times, OVH took the items to the trash dump. And on other occasions, employees and/or contract workers removed the trashed items from OVH property.

27. During Plaintiff's time in the Maintenance Department, she noticed Anderson, coworker, Bob Hodge, and friends of Anderson picking up items designated as trash for their own personal use.

28. On November 5, 2018, Anderson, who served as the Interim Maintenance Supervisor, alerted Plaintiff to a large desk taking up space in the garage at OVH. Anderson said he wanted it removed from the garage.

29. Neither Anderson, nor Plaintiff could find any record of the desk, or whether it was donated or purchased.

30. Although Rice had previously informed Plaintiff that she need not contact the General Services Division about excess donated items, because neither she nor Anderson could determine the origin of the desk, Plaintiff took a photograph of the desk and emailed it to Rice for Rice's directions.

31. Rice told Plaintiff that desks like that did not typically sell well and Rice designated the desk for trash.

32. Per Rice's instruction, Plaintiff completed the Miscellaneous Turn-In form, with a picture of the desk, and asked for approval from the General Services Division. After receiving approval, Plaintiff notified Anderson that the State designated the item as trash.

33. Anderson again reiterated that he wanted it out of the garage, and asked Plaintiff if she would like to have it.

34. Plaintiff indicated that she would need to speak with her husband first. Later, when Plaintiff reported to Anderson that her husband was interested, Anderson told Plaintiff to check with another employee who also wanted the desk. Plaintiff did so; however, the other employee said she could not use the desk.

35. Plaintiff again confirmed with Anderson that she could remove the trashed desk. Anderson confirmed that she could.

36. Anderson then instructed Plaintiff's coworker, Bob Hodge, to assist Plaintiff in transporting the desk to her vehicle.

37. Days later, Hodge loaded a puzzle desk, also designated as trash by Rice, into his vehicle for his personal use.

38. From early November until early January, no employee asked Plaintiff about the desk.

39. In December, Anderson received a promotion to Building Maintenance Supervisor 2.

40. Then, without any prior warning, on-site Police Officer Matthew Wertz interviewed Ms. Coffey about the desk, reading her the Miranda rights.

6

41. Plaintiff thereafter obtained counsel.

42. On January 16, 2019, Defendants OVH and ODVS placed Plaintiff on Administrative Leave with pay pending an investigation.

43. On February 7, 2019, Defendants OVH and ODVS asked Plaintiff to report to OVH on February 8, 2019. No one informed Plaintiff that the purpose of the meeting was to interview her.

44. When Plaintiff arrived, Defendant Amy Sutton and OVH employee Adam Brazie began asking Plaintiff questions.

45. Plaintiff informed Defendant Sutton that she had obtained counsel. Plaintiff asked if her counsel could be present for the interview.

46. Defendant Sutton denied Plaintiff's request.

47. Plaintiff asked Defendant Sutton if she could take the planned questions home with her to review with her counsel.

48. Defendant Sutton denied her request.

49. Plaintiff informed Defendant Sutton that she could not answer the questions without the assistance of her counsel.

50. Defendant Sutton consulted with Defendant Green, then instructed Plaintiff to write that she refused to answer each question.

51. On February 19, 2019, Defendants notified Plaintiff of a pre-disciplinary conference scheduled for February 21, 2019.

52. Defendants "charged" Plaintiff with violating ORC § 124.34 Number 1 for "dishonesty, failure of good behavior, and other acts of misfeasance, or nonfeasance in office";

Number 21 for "theft" and Number 24 for "interfering with, failing to cooperate in, or lying in an official investigation."

53. According to Defendants, Plaintiff's alleged violation of ORC § 124.34, Number 24 stemmed from her refusal to answer questions posed by Defendant Sutton on February 8, 2019.

54. At the time Defendants issued the pre-disciplinary hearing notice, they knew that Anderson and Hodge had admitted removing items designated as trash and/or that others had similarly removed trash.

55. Similarly, Defendants were aware that Plaintiff had identified male coworkers as removing trashed items from OVH premises for their own use.

56. Defendants did not investigate the admissions of Anderson or Hodge, both males.

57. Defendants did not investigate Plaintiff's allegations about her male coworkers.

58. In April 2019, Sean McCarthy, who at the time served as Assistant Director for ODVS, falsely notified Plaintiff that the Pre-Disciplinary Hearing Officer had not yet made a determination. Plaintiff later discovered that the Pre-Disciplinary Hearing Officer had issued a decision on March 22, 2019.

59. At the time of McCarthy's false statements, Plaintiff raised concerns of gender bias by Defendants OVH and ODVS because they were treating her differently than Anderson and Hodge.

60. On July 29, 2019, Defendants provided Plaintiff with a second notice of pre-disciplinary termination hearing.

61. This notice advised Plaintiff of her hearing date and added two additional charges based on the same conduct that occurred in November 2018.

62. Following the second hearing, Defendants terminated Plaintiff's employment.

63. Defendants Mary Miller and Deborah Ashenhurst executed Plaintiff's termination notice.

## COUNT I

### (Gender Discrimination – Title VII)

64. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

65. Plaintiff is a female and was fully qualified for her position at all relevant times.

66. Defendants OVH and ODVS treated Plaintiff differently than her male counterparts in violation of Title VII. Defendants' discriminatory conduct included, but was not limited to, terminating Plaintiff's employment and retaining males who engaged in similar conduct.

67. Defendants OVH's and ODVS's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

68. As a direct and proximate result of Defendants DVS's and ODVS's conduct, Plaintiff has suffered injury and damage for which she is entitled to judgment.

## COUNT II

### (Retaliation – Title VII)

69. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

70. Plaintiff engaged in the protected activity of complaining of gender discrimination and a hostile work environment on several occasions, most recently in June of 2018.

71. Defendants OVH's and ODVS's acts in retaliating against Plaintiff because of her protected complaints included, but were not limited to, terminating her employment.

9

72. Defendants OVH's and ODVS's actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

73. As a direct and proximate result of Defendants OVH's and ODVS's unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to Title VII.

## COUNT III

### (Violation of Fifth Amendment – 42 U.S.C. § 1983)

74. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

75. On January 9, 2019, PO Wertz notified Plaintiff of her Miranda rights.

76. The Fifth Amendment to the United States Constitution protects a witness from providing potentially self-incriminating responses to questions. Under *Garrity v. New Jersey*, 385 U.S. 493, 87 S. Ct. 616 (1967), where a public employer uses the threat of discharge to secure incriminatory evidence against an employee, the Fifth Amendment prohibits the use of such incriminating evidence in subsequent criminal proceedings.

77. The Fifth Amendment also protects a public employee when potentially self-incriminating questions are posed by her employer from punishment when the employee refuses to answer the questions for fear of self-incrimination. Defendants' actions in terminating Plaintiff in retaliation for her refusal to answer potentially self-incriminating questions after she sought the assistance of her counsel, violates the United States Constitution.

78. Defendants Ashenhurst, Miller, Keplinger, Sutton and Green's above-described conduct was intentional, malicious, willful and wanton in nature.

79. As a direct and proximate cause of Defendants' unlawful retaliatory conduct, Plaintiff has been damaged and is entitled to relief.

## COUNT IV

### (Violation of Fourteenth Amendment – 42 U.S.C. § 1983)

80. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

81. 42 U.S.C. § 1983 prohibits a person from depriving an individual of rights, privileges, or immunities secured by the Constitution under color of law.

82. The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination on the basis of sex, and from retaliation on the basis of sex discrimination complaints.

83. Defendants' discriminatory acts against Plaintiff include, but are not limited to, treating Plaintiff differently than her similarly-situated male colleagues and terminating Plaintiff because of her gender and in retaliation for her discrimination complaints.

84. Defendants Ashenhurst, Miller, Keplinger, Sutton and Green, at all times relevant to this Complaint, were Plaintiff's superiors and acted under the color of state law.

85. Defendants Ashenhurst, Miller, Keplinger, Sutton and Green's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

86. As a direct and proximate result of Defendants' discrimination and retaliation, Plaintiff has suffered harm and is entitled to judgment and damages.

**WHEREFORE**, Plaintiff Dorothy Coffey demands judgment against Defendants as follows:

(a) For an award of preliminary and permanent injunctive relief prohibiting and enjoining Defendants OVH and ODVS and any of their administrators from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated;

  (c) That Plaintiff be awarded compensatory damages including emotional distress damages;

  (d) That Plaintiff be awarded punitive damages;

  (e) That Plaintiff be awarded pre-judgment interest;

  (f) That Plaintiff be awarded front pay;

  (g) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than her compensation over several, separate tax years;

  (h) That Plaintiff be awarded reasonable attorneys' fees; and

  (i) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

/s/ *Katherine Daughtrey Neff*
Katherine Daughtrey Neff (0082245)
Trial Attorney for Plaintiff
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
Phone: 513-721-1975/Fax: 513-651-2570
*kneff@fmr.law*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ *Katherine Daughtrey Neff*